The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case. Excuse me. I'm sorry. I'm listening. Go ahead. This is our case. X-Gen Pharmaceuticals, Inc. v. Department of Financial and Professional Regulation. It is 4-21-0-3-2-5. Would the counsel for the appellant please state your name? Yes, sir. This is Alex Hirschfeld as the counsel for the appellant. Thank you. And for the appellate? I am Assistant Attorney General Mary Labreck, here on behalf of the defendant appellee, Illinois Department of Financial and Professional Regulation, and two of its officers. Thank you. The appellant may proceed. May it please the court, your honors, thank you for letting me appear by phone. I'm sorry for the technology issues, but nevertheless, I understand since this is a de novo review, I'd like to just share a few basic background facts. This case arises from a case that had occurred in the state of Ohio where X-Gen Pharmaceuticals was disciplined for unlicensed shipment in the years of 2007, 8, 9, and ultimately were disciplined. They just paid a monetary fine for the discipline and ultimately that somehow triggered the state of Illinois through the Illinois Department of Financial and Professional Regulation to then seek what they call reciprocal disciplinary action against X-Gen for the activity that solely only occurred in the state of Ohio. Had nothing to do with the state of Illinois. Nevertheless, we had to go through a whole litigation process, administrative hearing, circuit court level, and now we're before your honors here on this appeal because the lower court affirmed the agency's, I'm sorry, the administrative judge's opinion that discipline was due to be made against X-Gen. And we, your honors, have briefed and are briefed that this type of discipline is preempted by federal law, specifically the DQSA, which is the Drug Quality Security Act, which gives the FDA the power to regulate state licensing of wholesale drug distributors. Mr. Hershfield? Yes. I apologize, but do you agree that the Secretary of Health and Human Services has not yet promulgated any regulations or standards applicable to the states at this time? I'm sorry, could you say that last part one more time? That they have not passed any regulations or standards applicable to the states at this point as they were required in the act. I am unaware of that, sir, yes. Okay. And doesn't that signify there is no preemptive clause that they have not, in fact, promulgated any rules for the states? My understanding was the whole purpose of passing this statute through, and it was congressional intent, we have that in our brief on page 16, 18, and maybe 20, was that the intention was that this DQSA was to be used for the benefit of wholesale distributor of pharmaceutical companies to avoid this needless, you know, reciprocal type conduct, particularly if it affects interstate commerce. And so my understanding is that it is applicable, and that it is enforceable in some sense, and there's not some absolute ability for a state to regulate basically the discipline that occurs outside of its borders within another state, which in this instance, Ohio, Ohio conduct for action had nothing to do with the state of Illinois. It just serves no purpose as far as what we briefed. And therefore, we felt like since it affects the laws of another state potentially are trying to intrude upon that, then that affects the province of what the role is of the FDA, which is regulate, you know, licensure from an interstate commerce perspective. Mr. You've talked about your brief and I have to tell you after a full reading of your brief. I don't see where you clearly identify the exact language of any regulation that supports a preemptive cause. Where is that. I believe on page 17. We talked about how it was enacted to amend the Federal Food Drug and Cosmetic Act and then it goes into under the section 204 DQSA beginning of the. You want the page or you want me to read it to you. I want the exact language where it says, you know, satisfies your argument for the preemptive clause. Well, I guess our interpretation is that it's preempted because it relates to or is covered by something that the FDA, their function is and and as far as, you know, licensure is concerned. And so we set that out on page 17 to 18 of our brief. I mean, I mean, I guess it may not absolutely directly explicitly say unquestionably what you're saying. But, you know, our interpretation, our reading and our briefing of the issues. That's what we extrapolated from information we provide. Well, then, if you're admitting it's vague. How could that be an express preemption. Well, it's expressed in the sense that it talks about relates to licensure regular and then even though it doesn't say discipline or reciprocal action. Problem is, is the state of Illinois has a statute that interferes with the licensure position of the FDA and because the FDA already requires reporting of certain discipline. They have other requirements, background checks and stuff like that. But they but because also the state of Illinois also requires the reporting of disciplinary action. And that's what triggers them to get in to the point to where then they can take disciplinary action against action. Well, let me stop you there. Okay. Did your client report to the department that there had been a disciplinary action in Ohio. Yes, they reported to everyone. That's because they use a service to report whenever there's discipline period. Okay. And so that report then resulted in the department's actions. Is that your argument. Yes. Okay. Yes, absolutely. Yes. So, it resulted in that and then the department then proceeded with taking its action against action for discipline and supposedly the argument from the, from the, I'll call them the department. Is that well this is done in an effort to avoid the relegation of the issue but that's not the case we had to relitigate basically the issue for the most part by going all the way through all the different levels of the courts the administrative court and circuit court now or the appellate court I know that's the appellate process. But there was no simple fast and easy way to deal with this number one number two fact that, again, it happened in another state that had nothing to do with Illinois and Illinois statute touches or concerns only the activity that occurs within it. From our reading from the statute that that that is that issue that we're talking about here. That answer your question. Yes, it did. Mr Hirschfield. Yes, it doesn't. The print of clause that we do have before us in section I think it's 360 or be one of the drug it. It only bars states from establishing standards and regulations concerning concerning drug distribution and licensing. Is that correct. Does say drug distribution license that's what it does say yes sir, you're on. Okay. But it doesn't preclude states from imposing fines or civil penalties for violations of the state law. You agree with that as well. It does not say that in the specifically no sir. So they are not precluded from imposing fine. Well, again, I think that it runs afoul the problem with that kind of infringes upon again the function of the FDA and specifically talks about direct being directly related to are covered by, which we would talk about being directly related to the state of Illinois. And then, of course, as you know, and then that you would get license and then run it do go about your business, but then that's only within the state of Illinois. And so, the thing is, is it also has to where the What am I trying to say here. So, I guess what I'm trying to say is that the, you know, again the activity is specific to Illinois, and they can't it undermines the act. If you're trying to discipline for something that happens in another state. When you can also have 40 or eight or 49 other states also disciplined for the same thing. This whole uniformity now national policy was provided to increase judicial economy increased regulatory certainty and then also just kind of cut down on all that unnecessary. You know, discipline or actions taken against these pharmaceutical companies to make it where it's not too unduly burdensome, I guess. Mr. You've, you've talked to us about this. The drug what what it says in the drug act, but it does not appear that that self execute. The Secretary of Health Human Services is supposed to adopt regulations. They've never been adopted. What, why does this kick into effect. If the legislation itself says that the Secretary's got to do that. Otherwise, it's just floating around out there in the air does show Congress's intent, but that intent is fulfilled until the regulations are adapted adopted. I hear what you're saying. And again, our interpretation or reading of the application of this was that there was obviously a an intent movement towards trying to simplify things for wholesale distributor pharmaceutical companies, and, you know, I guess to Council as a follow up to justice connects question. When the regulations are adopted. Wouldn't it be correct to say that they may be adopted in such a fashion that the view you're expressing will be stated in the new regulations, but maybe it'll be the new regulations will say the opposite position. And so how can this court know until the regulations are exactly or are adopted. What they might tend to do in regard to your interpretation of the statute, the federal statute. Well, I hate to speculate what they may or may not do ultimately, you know, the opposite but I guess again congressional intent plain reading of the statute as it is provided. Again appears and I can't think that they would go against what I'm what I'm reading from this maybe I'm misunderstanding it. But that they have this process of reporting disciplinary action. And then also that they have this process of trying to uniformly make this administrative process easier on the wholesale distributors to where they eliminate buried in duplicative state regulations and so I guess that's all I got to go by. Thank you. You can continue with your argument. Okay, thank you. I'm sorry I didn't know if we had any more questions. So, you know, ultimately, and I don't know how much time I have because I'm on the phone but the DQ s a express preemption clause prohibits the state law that are directly related to or covered by the federal standards, according to 21 usds 360 e for the reporting of disciplinary action is covered by the federal standards and as such any state law that involves such reporting is preempted. And again, we point to the fact that the 225 ILC s 125 five, a five, again directly interferes with that defendants argue that 21 USC, a authorized action in the state of Illinois for violation state of Ohio however the plain language of the statute clearly limits the authority of Illinois the regulation of activities that occur within the state of Illinois. And then, just, just a quick read of usda 360 e for before we provide that state may provide for the suspension or revocation of license issued by the state for violations of all such states, but the section does not include the preemption of Illinois state law because the plain text specifies the violation must be the laws of the same state. Illinois law does recognize federal preemption as noted in our brief on page 22 section 40. I won't necessarily read all that just says, and relevant part all rules and regulations promulgated under section shall conform the wholesale drug distributor license guidelines formally adopted by FDA at 21 CFR part two or five. And, and so, your honors. Again, 225 ILC yes 120 5585 is directly related to 21 USC 360 triple E two. And again we cite that in our brief brief on page 22 and therefore conflicts that it's preempted by the federal statute as the federal statute provides for reporting of disciplinary disciplinary actions taken against any licensee, and any state in which their license. The department tries to argue that somehow licensure and discipline are completely separate not related but they are because for licensure. You apply you get a license. And later you get discipline you can get suspended or revoked. It all relates back to the ability then to come back to get reinstated through licensure or to make a future application for licensure. So, again, the express purpose of the DQ SA and its amendments. Food drug and cosmetic act as evidence both the text of the act and congressional records provide uniform national standard for licensure. And so without belaboring the point, your honors, the state of Illinois is ultimately just brought an action under the statute of 225 ILC yes 120 5585 discipline action for contract conduct that's contrary to the laws of Ohio that occurred entirely within the state of Ohio attempts to take such disciplinary disciplinary measures that clearly undermine the uniform standards intended by the passage of the DQ SA, and, and therefore the authority to discipline license holder across the state is interfered with the state of Illinois is within its authority discipline license drug wholesalers violation license that again occur within Illinois however typical discipline of the interstate licensee is covered by federal standards and therefore we will again state in our brief on page 23 that this is impermissible, as it undermines what's preempted by 21 us CS 360 triple E two, and therefore your, your honors we respectfully request that this court vacate the lower courts decision, finding discipline against action as the conduct or action taken against them as preemptive. Thank you. Thank you, Mr Hirschfield we'll hear from you on rebuttal, Mr Brackett may proceed. Good morning, your honors counsel, may it please the court. I'll begin by with a with a brief follow up on your honors point that the DQ essays express preemption clause is not yet effective. Although section 360 Tripoli to directed the FDA to adopt new standards by November, 2015, the standards, as you know, to we're not in fact adopted by that date extends reply brief says that there is a regulation located at the address specified for the So the new regulation is still in development. We noted in our brief that it was in a notice and comment period that was scheduled to end in June, 2022. Subsequently, the comment period was extended to September 6 2022, and the department has not yet heard any news extending beyond that. So this court has the option of finding that section 55 a five was not preempted simply because the preemption clause is not yet effective. But this court need not do so because even if the clause were effective. It is clear that the plain language of the DQ essay was not intended to preempt state discretion in disciplining licenses. The plain language shows that the states and the federal government are to share responsibility for promoting drug quality and security, and that while the FDA is role is to establish the substantive standards for licensing. The states are to be licensors and to handle the disciplining of licensees. That's the USA leaves the decision whether to apply reciprocal discipline to the states. There are three ways that this court may find statutes preempted. First, Congress did not expressly preempt or prohibit state statutes involving reciprocal discipline. There is an express preemption clause, as we've noted in the DQ essay but it does not refer to reciprocal discipline, nor even to standards that might be thought broadly to include such matters. And here I'd like to get into some specific language. There are three statutes that together define the scope of the preemption and give it a very precise meaning. We're not just talking section will begin with section 360 triple E for B1 which is the express preemption clause. And that bar state laws that are inconsistent with less stringent than directly related to or covered by the standards and requirements applicable under section 353 of this title. We're not talking about being related in some sense to licensing, we're talking, we're talking about being related to a specific statute section 353 of this title and section 353, which you can find at pages nine to 10 of our supplementary appendix has subsections requirements and standards which echo the specific language of the preemption clause. It identifies when and by whom wholesale distributors must be licensed and further states that each license shall meet the standards terms and conditions, established by the Secretary of Health and Human Services under section 360 triple E two of this title. Now section 360 triple E. Mr. I apologize but the Council for the appellant argues in their brief that 360 triple E only provides for suspension or revocation of licenses by the state. Only if the state's violation of the laws. In other words, only if it violates the laws of that state here it's a violation of a law in Ohio. How do you respond to his argument in the brief. Your Honor, it says no such thing, and there's, there's an affirmative case and a negative case to meet here. First of all, section 360 triple E two is titled national standards for prescription drug wholesale distributors, and it sets forth an enumerated list of matters concerning which the FDA is charged with establishing standards by regulation. And you can find that the supplementary appendix of our brief pages 23 to 24. And the matters that are to be the subject of federal standards and federal preemption include things like the storage and handling of prescription drugs establishment and maintenance of records of distribution inspection of physical facilities, persons who are to be prohibited from obtaining licensure. There is no mention in this section on standards of discipline in this section on standards of discipline or matters pertaining to it, but there is reference to discipline elsewhere. But Council isn't x gen pharmaceuticals, a wholesale distributor. Yes, sir. And under Section four C of the drug act, essentially provides that nothing in the act prohibits states enforcement of their regulations and requirements related to distribution of prescription drugs, but it's specifically precludes that actor that provision of the prescription drugs, which is what x gen is. I'm sorry. I didn't understand your question. My question is, doesn't a section four C of that act prohibit states from enforcing regulations and setting standards regarding prescription drugs, as it relates to wholesale distributors. Well, it, it prohibits them from establishing standards that are different from the very specific standards that it identifies in section 360 triple E two, and, and that will be further defined when the regulation finally does come out. But it also in that in that same section where it gives the express preemption clause, it, it identifies some matters that it that that Congress did not intend to preempt in that same statute, it says that the preemption clause does not cover administration administrative action including fines suspension or revocation of licenses issued by the state for violations of the laws of such state fines imprisonment or civil penalties for violations of federal, state, and local drug laws and regulation of activities of licensees in a manner that is consistent with product tracing requirements. This section says twice, notwithstanding paragraph one which is the express preemption clause, the state may do these things. And some sections before a and before be cover the traditional categories of discipline. Now, I understand that x gen is arguing that section before be is meant to confine states to disciplining licensees for conduct that occurs within their own borders. It claims that this idea is implicit in Congress's choice of the phrase violation of the laws of such state, and that Congress otherwise would have used the phrase, any state law violation. But that's a lot to read in such simple language, especially given that this section does not draw any distinction between conduct inside and outside state boundaries. And there's an additional circumstance that relies exchange interpretation here. The use of reciprocal discipline and wholesale drug distributor licensing laws is widespread and well established, which means that Congress would have said so clearly if it meant to abolish the practice, if it wanted to head states off an entirely new direction. So, the express route is clearly closed by the enumeration of specific standards that don't include discipline, and by the express statement that the state may go ahead and use these forms of discipline. And then we have an exclusion clause at the end to back the whole thing up that says that anything that is not part of 353 C is not going to be excluded under the preemption clause, so they very carefully limited the preemption clause so it wouldn't be as broad as wants to have it. Congress could also have preempted section 55A5 through implied field preemption, that is by preempting an entire field of activity that substitutes the authority to impose reciprocal discipline, but again it clearly didn't. It did not purport to display state control the disciplining of licensees quite the opposite. In fact, not only did it indicate that the express preemption clause was not to affect the state's authority to discipline, but Congress designed a system in which the state from which a drug was distributed had not established a licensure requirement. That condition is not present here. XGEN suggests that Congress intended to reserve for itself control of interstate disciplinary action. But it fails to ground this suggestion in any language of the statutes. The only reference to interstate distribution is in section 353 E1A2, which states that if a drug is distributed interstate, the distributor must be licensed by the state into which the drug is distributed, if that state so requires. This is that in supplementary appendix page nine. This is hardly a mandate for federal control. And XGEN also says that the reporting requirement shows an intent to control, but again that is inconsistent with all of the provisions giving the right to license and discipline to the states. It equally, well, not equally, more reasonably serves to facilitate the states in doing reciprocal discipline. Finally, this court may protect Congress's objectives by applying implied conflict preemption. Courts will imply that a state law is preempted when it conflicts with a federal law and compliance with both enactments is impossible or the state law presents an obstacle to the accomplishment of the federal objectives. XGEN tries hard to manufacture a conflict with the federal objectives. But it misconstrues the statute, largely due to a fundamental mistake in its interpretive methodology. It focused on what it perceives to be the purposes of the statute as reflected in the congressional record. But this court looks to the plain language of the statute as evidence of what the legislature intended and considers legislative history only when the language of a statute is ambiguous. XGEN does not claim that any of the relevant language is ambiguous, nor does it offer its quotations from the congressional record as glosses on any particular language of the statutes. It simply argues that the use of reciprocal discipline would frustrate the purposes it perceives. More specifically, it claims that allowing distributors to be subject to various state reporting standards would absolutely defy the desired uniformity and that having to defend against multiple sister state disciplinary actions violates Congress's goal of avoiding anything wasteful and duplicative. But the DQSA does not require uniformity in every aspect of licensing. Its goal is to ensure, looking at the precise language of the statute again, its goal is to ensure uniformity with respect to the standards set forth in this section. That section is 360-EEE-2B, found at our supplementary appendix, page 23. That's the statute that sets forth the specific standards. There is to be uniformity with respect to those particular standards, not with respect to everything that has anything to do with licensing. And XGEN points to no language in the DQSA that suggests that Congress regarded reciprocal discipline as wasteful and duplicative. Moreover, a reasonable inference is that it did not, given that such discipline is a familiar disciplinary tool, especially in the medical and legal contexts. There are a number of cases, especially involving the Medical Practice Act, such as Gross v. Department of Financial and Professional Regulation, in the First District, and there are a number of cases cited on pages 27-29 of our brief. XGEN further argues that the federal reporting requirement, section 353-E2A2, at supplementary appendix page 10, preempts any state reporting requirement, which makes reciprocal discipline impossible. But the problem with that, first of all, it's not clear exactly what XGEN means by saying that Illinois has a reporting requirement. At the time that I filed my brief, I thought that XGEN was arguing that the questions it asked in its renewal application amounted to such a requirement, but now I'm not sure that there were such questions. I know, as counsel has said, that XGEN self-reported the Ohio discipline through a company that services state licenses, and there are potential benefits for that, in that you could get points in mitigation, but it's not clear that this is a reporting requirement. And even if it was, the state reporting requirement would not cover the same ground. This is something that would rather run with it in parallel, the state reporting requirement and the federal reporting requirement. So there's no basis for saying that the reporting requirement is an obstacle to the accomplishment of the federal… I'm not sure I follow what you're saying there. Illinois does not have a requirement under the statute for a licensee to report a disciplinary action from another state? It doesn't have a specific requirement like the federal requirement, which is that within a certain period of time after receiving discipline, you must report to the federal database. And that's going to be further fleshed out by the regulation when that's established too, but there's no formal requirement like that in Illinois law, in its statutes or regulations. I asked opposing counsel if his client did make such a report to the department, and he answered yes. Is that your recollection as well? Yes, they have a company that handles licensing matters for them, and that company… And I believe that many companies do this too. They have companies that take care of these things and they notify them. They notify the other states with which they have licenses when there's something comes up. And there's other ways to do that, and one of the things about the reporting requirement, when it's finished, the states will also be able to look to that for information to use for reciprocal discipline because the federal statute specifically provides that the FDA will coordinate with the states and they will allow them access to this database. So, a specific reporting requirement was not in effect here, and it looks like it's not going to need to be in the future. I think ex-gen argues in at least some place that your interpretation of this new act, or it's not new anymore, is that this violation in Ohio may have precipitated not only Illinois but many, many other states to also use the same conduct to impose a penalty. Is that a problem? Well, it's not a problem for this case because this case is not about whether the particular discipline that they received was reasonable, and it doesn't have anything to do with… …that, with reciprocal discipline, and then other cases based on that. But any such thing hasn't happened yet, and there'll be time enough for them to object to that if it does happen. In this case, we have the discipline in Ohio, and then we have a single reciprocal discipline that is founded upon the violation of Illinois law that is related to that discipline. And so, any other concerns that they may have about problems caused by reciprocal discipline or its validity under the Constitution or any other source are not an issue here because they specified that there was one issue they were raising on appeal, which is the issue of preemption. So, if they lose on that preemption point, the case is over, and we believe that they do. If there are no further questions, for all the reasons presented in this argument and our briefs, we urge this Court to affirm the judgment of the Circuit Court, thereby upholding the Director's final administrative decision. Thank you. Mr. Hirshfield, we'll hear from you on rebuttal. Yes, sir, and I understand I have just five minutes or less, correct? I believe that. Okay, okay, I'll try and be brief. Your Honors, I appreciate the opportunity to respond. I'll just touch on what you guys just got through discussing is how there isn't potential concern or harm to befall upon action for reciprocal discipline. And while I guess we weren't, I guess, going through that, you know, very heavily through briefing, but I will say there is harm because the reciprocal action certainly would trigger others to look at, and in my experience for whatever it's worth, pointing out that action has been disciplined in Ohio and then reciprocal in Illinois, and then it kind of is a pile on, and that's exactly what this DQSA and Congress intended to try to, I guess, avoid based on our briefing is to prevent this unnecessary duplicitous type of sister state discipline or what have you. And, of course, as you guys pointed out, action is excluded as a wholesale distributor of pharmaceuticals. Housing Council is talking about some of these other medical cases. I mean, I can understand when you're talking about an individual doctor or dentist or some other type of professional who's licensed, engaging in misconduct, being disciplined. But action is a wholesale distributor who has already been disciplined by Ohio, already did what they were supposed to do, already served out the nature of discipline, which is just payment of the fine, which is all that Illinois was trying to do in this case is require yet another payment of the fine. And so just a pile on, so once you start stacking it up on paper, these other jurisdictions, and I can tell you Michigan is one of them, although that case went away, they start looking at, well, you've been disciplined here and here and here, and so it does cause harm and does cause injury. And just to follow up as far as congressional intent, your honors, congressional intent is the primarily determined by the language of the preemption. As far as our brief is concerned, we mentioned that Congress intended in this scenario that the DQSA be active and clear about its purpose, that pharmaceutical distribution occurs within nationwide and is estimated that within the United States there are 4 billion prescriptions filled each year. And I'm just providing the language as quoted, by replacing the current patchwork of multiple state laws with a uniform national standard, we're improving safety and eliminating duplicative regulations. Again, this is Illinois trying to regulate action on something that they've already been disciplined, that's the very purpose and the reason why this preemption exists is to avoid that unnecessary regulation. Mr. Hirshfield, I apologize for interrupting you, because in your brief you talk about what you've alluded to this morning about this floodgate of litigation of all of the states coming in to seek additional fines for a violation in a different state. But this fine was imposed in 2017. And isn't it true the only state that has sought to punish ex-gen is Illinois? No, sir. Michigan was another one. And in fact, I was directly involved. So we have two states. So your concern is because two states have decided to take on ex-gen for a violation, that this is going to open the floodgates? No, sir. It actually wasn't just limited to them. We informally also dealt with Colorado as well. Michigan dismissed the case because they didn't feel like they could meet their burden. And ultimately, there wasn't discipline that resulted because we had interaction with them, dealt with the issue, and it was dismissed. It was just only Illinois was the one that was insisted on pursuing this discipline, despite the fact that ex-gen already received discipline in another state and already dealt with its punishment there. And then yet for the same conduct. And again, that's why we felt the need to challenge the statute and its constitutionality and saying that it was preempted by the DQSA. Does that answer your question, Your Honor? Thank you. Do I have any more time or am I out? I'm sorry. I know you can't see the screen. It flashes on our screen. You had two minutes just a while ago and will be warned when your time has expired. And we'll tell you now. Your time has expired. I'll give you a sentence or two to conclude. Yes, sir. Thank you. Oh, I'm sorry. Respectfully, again, we are just at the position that in our briefs and what the DQSA sets out that Illinois, the law cited, is preempted from enforcing discipline. And we respectfully again ask this court vacate the lower court's decision to uphold the discipline against ex-gen. Thank you. Thank you, counsel, for your arguments. We'll take this matter under advisement.